UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

DACETA SIMPSON,

                Plaintiff,

  -against-                                    05 Civ. 5144 (CM)

ENLARGED CITY SCHOOL DISTRICT
OF NEWBURGH, and CHERYL BIVONA,

                Defendants.
----------------------------------------------------------x

### DECISION AND ORDER REGARDING DEFENDANTS' MOTION TO DISMISS PURSUANT TO 12(b)(1) AND 12(b)(6)

McMahon, J:

      Plaintiff, a Jamaican-born black woman with extensive prior teaching experience, was hired as a special education teacher in the Newburgh school system. During the three-year period of her employment, she was reviewed by various supervisors, who found her diction and vocabulary difficult for special education students to comprehend. At the end of each of the three years, she was recommended for termination; the third recommendation was acted upon and Plaintiff was terminated. She has brought suit under 42 U.S.C. § 1981 and § 1983, alleging discrimination based on race and national origin and violation of her due process rights. Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), claiming sovereign immunity and failure to state a cause of action.

      For the reasons stated below, the motion is granted in part and denied in part.

Facts

Daceta Simpson was employed as a special education teacher in the Newburgh City School District ("the District"), from 2001 to 2003 at the Heritage Junior High School ("Heritage") and from 2003 to 2004 at Meadow Hill School. Plaintiff's Complaint at ¶¶ 5, 28. During this period, she was overseen in her duties by Cheryl Bivona, Director of Special Education. Ms. Simpson is a black woman who was born in Jamaica, where she had worked as a teacher for fifteen years prior to her employment in the District. Cplt. ¶¶ 1, 6.

Ms. Simpson's classroom manner was observed by Ms. Bivona and by Joseph Raiti, principal of Heritage, on several occasions during the 2001-2002 school year. Cplt. ¶¶ 7-10. In a May 16th memorandum, she was told by Mr. Raiti that the class he observed was "well-planned and delivered." Cplt. ¶ 10. It also informed her that Ms. Bivona had concerns with her teaching abilities, specifically regarding Ms. Simpson's diction and vocabulary. Id. A week later, Mr. Raiti recommended her termination as a teacher; however, this recommendation was apparently withdrawn and Ms. Simpson was rehired for one year with an understanding that she would be re-evaluated after the first semester. Cplt. ¶¶ 10-14. It is not clear whether the District Board reviewed or acted upon this recommendation before it was withdrawn.

During the 2002-2003 year, she was again observed by Ms. Bivona and a Ms. Gail Tummarello, from whom she again received mixed reviews. Cplt. ¶¶ 19-21. At the end of the second year, District Superintendent Johns decided to fire her. Cplt. ¶ 25. Again Ms. Simpson appealed, and Superintendent Johns decided instead to transfer her to Meadow Hill. In addition, the principal of Meadow Hill was instructed to formulate a "teacher improvement plan" for Ms. Simpson and to "keep a close eye on this placement," with instructions to report to a Mr. John

Knight regarding her progress. Cplt. ¶¶ 28-29.

An initial teacher improvement plan was made, rejected as somehow inconsistent with state regulations, and a second plan was issued in November, 2003. Cplt. ¶¶ 31-32. The contents of this plan were not described, but it is alleged that Ms. Simpson was given insufficient opportunity to conform to the plan before the District finally decided to terminate her. Cplt. ¶ 33. It is further alleged that this determination was arrived at in January, 2004, although it was not until June 17 that Acting Superintendent Annette Saturnelli informed the Plaintiff in writing that her termination would be recommended. Cplt. ¶¶ 33-34. Ms. Saturnelli allegedly provided four reasons for this decision although the complaint does not list them. Ms. Simpson alleges that the reasons were "pre-textual and non-factual." Cplt. ¶¶ 34-35. It is not alleged that Ms. Simpson had tenure, or otherwise had a guarantee of continued employment.

It is generally alleged that Ms. Bivona was biased against Ms. Simpson based on her race and national origin and was unable to make fair determinations as to her abilities, Cplt. ¶¶ 50-51; that a decision to terminate Ms. Simpson was made prior to her transfer to Meadow Hill, whose principal "plainly understood that her task was to justify the district's decision", Cplt.¶ 8; and that the District's failure to provide a teacher improvement plan until November, 2003 constituted discrimination against Ms. Simpson and a violation of state-law created rights. See Cplt. ¶¶ 46-49. It is further alleged that the District "substantially under-employs minorities", which "represents an official policy and practice which caused plaintiff's termination in this instance." Cplt.¶¶ 53, 55.

Ms. Simpson brought suit in May, 2005, alleging:

   (1) failure to "accord the same terms and conditions to plaintiff as it did to non-foreign teachers" under 42 U.S.C. § 1981;

   (2) discrimination on the basis of race and national origin under the Fourteenth Amendment and 42 U.S.C. § 1983; and

   (3) denial of her due process rights under the Fourteenth Amendment and 42 U.S.C. § 1983 for wrongful denial of a timely-produced teacher improvement plan.

The District immediately sought to dismiss the complaint under Fed. R. Civ. P. 12(b)(1), asserting that the District was entitled to sovereign immunity under the Eleventh Amendment; and 12(b)(6), asserting the legal insufficiency of each of Ms. Simpson's claims.

## Discussion

*Standard of Review*

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for lack of subject matter jurisdiction of the court in which the action was filed. Rule 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations. See Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S.

508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." Frasier v. Gen. Elec. Co., 930 F.2d 1004, 1007 (2d Cir.1991). Therefore, this Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Stewart v. Jackson & Nash, 976 F.2d 86, 87 (2d Cir. 1992) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In employment discrimination litigation under § 1981 or § 1983, there is no requirement that a prima facie case be pled with specificity. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515, 122 S.Ct. 992, 999, 152 L.Ed.2d 1 (2002). Rather, the liberal federal pleading rules under Fed. R. Civ. P. 8(a) require that the pleadings only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 512 (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

*Sovereign Immunity*

The Eleventh Amendment states that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects not only the state itself, but also "arms of the state" such as statewide agencies; however, it does not extend to municipal corporations or counties. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280, 97 S.Ct. 568, 572 (1979). Those state entities which may avail themselves of sovereign immunity are also

not "persons" within the meaning of 42 U.S.C. § 1983, and thus are immune from suit. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).

Until recently, it was held to be a matter of settled law in New York that local school districts could not avail themselves of sovereign immunity. See, e.g, Fay v. South Colonie Cent. Sch. Dist., 802 F.2d 21, 27 (2d Cir.1986), overruled on other grounds by Taylor v. Vermont Dep't of Educ., 313 F.3d 768 (2d Cir. 2002); Gavigan v. Clarkstown Cent. Sch. Dist., 84 F. Supp. 2d 540, 549 (S.D.N.Y. 2000). The recent unpublished Second Circuit decision in Scaglione v. Mamaroneck Union Free Sch. Dist. cast some doubt on that proposition, barring a suit under the Age Discrimination Employment Act (ADEA) against the Mamaroneck school system on the grounds of Eleventh Amendment immunity. See 47 Fed. Appx. 17, 18 (2d Cir. 2002) (*citing* Kimel v. Florida Bd. of Regents, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (limiting the application of the ADEA against non-consenting states)). The Scaglione decision "may not be cited as precedential authority" in this Circuit, and has been distinguished by later district court decisions. See Cohn v. New Paltz Cent. Sch. Dist., 363 F. Supp. 2d 421 (N.D.N.Y. 2005), Hanig v. Yorktown Cent. Sch. Dist., - - - F. Supp. 2d. - - -, 2005 WL 2123800 (S.D.N.Y. Sept. 2, 2005). The fact is, the law on this issue in this Circuit remains Fay v. Colonie, and until the Second Circuit reverses that published decision, this Court intends to follow it. School districts in New York are not entitled to sovereign immunity. The District's motion to dismiss on such grounds is DENIED.

*42 U.S.C. § 1983*

Ms. Simpson has sought relief under § 1983 for violations of her rights under the equal

protection clause of the Fourteenth Amendment based on her race and national origin. Cplt. ¶ 58. To establish a prima facie case under §1983, the plaintiff must show (1) that the defendant has deprived her of a right secured by the Constitution and laws of the United States, and (2) that the defendant deprived her of this right under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory. See 42 U.S.C. § 1983 (2005), see also Adickes v. S. H. Kress & Co., 398 U.S. 144, 150 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). "The involvement of a state official... plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions... were officially authorized, or lawful." Id. At 153. However, to establish a §1983 claim against a municipality or state agency, plaintiff must show some "custom or usage" of the state agency, or action by an individual in a policymaking position, which caused the denial of the plaintiff's rights. See Monell v. Dep't of Soc. Servs, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-2038, 56 L.Ed.2d 611 (1978). Absent such a custom or usage, the doctrine of respondeat superior may not be used to establish liability of a municipality or state agency based solely on the actions of its employees. See id. However, as noted above, there is no requirement that the plaintiff *plead* a prima facie case in the initial complaint. See Swierkiewicz, 534 U.S. at 512.

There is no question that Ms. Simpson has made sufficient allegations for a suit against Ms. Bivona in her capacity as Ms. Simpson's supervisor. Ms. Simpson is a black woman who was terminated from her position in the school district. Ms. Bivona, her supervisor, was responsible for executing her performance reviews, and did so under color of state authority. Furthermore, one might interpret Ms. Bivona's statements regarding Ms. Simpson's command of English as indicative of a discriminatory intent towards West Indian minorities.

With respect to the District itself, Plaintiff's alleges a policy or usage related to "under-employment" of racial minorities, and that such under-employment "represents an official policy and practice which caused plaintiff's termination." Complaint at ¶55. While mere under-employment of minorities, absent a discriminatory intent or plan, is insufficient as a matter of law to constitute a "policy," see Washington v. Davis, 426 U.S. 229, 242, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976), I again read the pleadings broadly, so as to include an assertion of an underlying discriminatory agenda on the part of the District which led to such under-employment in general. Alternatively, Ms. Simpson has also pointed to sporadic involvement of the District Superintendents Johns and Saturnelli in her termination. These assertions are sufficient to meet the notice pleading requirements under Fed. R. Civ. P. Rule 8(a).

It should also be noted that diction and patterns of speech may constitute valid grounds for termination of employment, provided that the "oral communications skills of a candidate... are reasonably related to job performance." Fragrante v. City and County of Honolulu, 88 F.2d 591, 597 (9th Cir. 1989); see also Meija v. New York Sheraton Hotel, 459 F. Supp. 375 (S.D.N.Y. 1979) (dismissing claim under Title VII of the Civil Rights Act for failure to promote a chambermaid to a desk position based on her lack of English skills); cf. Berke v. Ohio Dep't of Pub. Welfare, 628 F.2d 980 (6th Cir. 1980) (upholding claim under Civil Rights Act for Polish immigrant with "command of the English language... well above that of the average adult American"). At the same time, case law recommends close scrutiny of dismissals based on accent or diction to screen bonafide personnel decisions from merely pretextual firings of non-Americans or non-whites. See Fragrante, 88 F.2d at 596. Therefore, although there is no question that the position of special education teacher is one that calls for the highest degree of English

proficiency, it cannot be said as a matter of law that the determination of the District regarding Ms. Simpson's command of English is sufficient to dismiss her § 1983 claims.

Therefore, the motion to dismiss the second grounds of the complaint, race and national origin discrimination under 42 U.S.C. § 1983, is DENIED.

*42 U.S.C. § 1981*

42 U.S.C. § 1981(a) states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Unlike § 1983, there is no requirement of state action to establish a § 1981 claim; a plaintiff must establish facts in support of the following prima facie elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute [the right to contract]." Mian v. Donaldson, Lufkin & Jenrette Sec. Grp., 7 F.3d 1085, 1087-88 (2d Cir. 1993). Plaintiff must also establish facts showing either discriminatory intent, or treatment different from that of white persons in similar situations. See Kashelkar v. Rubin & Rothman, 97 F. Supp. 2d 383, 389 (S.D.N.Y. 2000). Again, there is no requirement that the plaintiff plead a prima facie case. See Swierkiewicz, 534 U.S. at 512.

Section 1981 has been interpreted, in light of its history and plain language, to apply only to *racial* discrimination; discrimination based on other reasons is outside of its scope. See

Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir.1998) , Santos v. Costco Wholesale, Inc., 271 F. Supp. 2d 565, 571-572 (S.D.N.Y. 2003). The definition of "race" may certainly be subject to debate and redefinition over time, and may be based on more than just pigmentation. See St. Francis College v. Al-Khazraji, 481 U.S. 604, 610-613, 107 S.Ct. 2022, 2027-2028, 95 L.Ed.2d 582 (1987). However, the Plaintiff's § 1981 claim speaks specifically of her 'national origin' and does not mention race. Cplt. ¶ 57. There is no basis in law to assert that "Jamaican" constitutes a separate and independent racial classification. As such, discrimination based on a Jamaican pattern of speech alone cannot be grounds for a claim under § 1981.

It is true that the pleadings as a whole are more vague, indicating at times that the reasons for her termination are inherently discriminatory, and at other times that the reasons for her firing were pretextual, and that racial animus was the true basis for her termination. Absent a clearer statement, however, I decline to redraft the complaint.

Defendant's motion to dismiss the Plaintiff's § 1981 claims is GRANTED as to Ms. Simpson's claims of discrimination based on her national origin. Plaintiff has leave to amend the complaint to assert § 1981 claims based on racial discrimination alone, rather than national origin.

*Due Process*

Plaintiff alleges that the District failed to grant her a "Professional Improvement Plan" as required by state law, which denial constituted a violation of her due process rights under the Fourteenth Amendment. Cplt. ¶¶ 41, 59. As an initial matter, we note that the Plaintiff has not indicated any particular source of state law for this requirement, nor does New York statutory

law speak of "Performance Improvement Plans" for teachers. The District has pointed to §100.2(o) of the New York Codes, Rules and Regulations, entitled, "Annual Professional Performance Review," which indeed establishes a reporting system for New York public school districts. See 8 NYCRR § 100.2(o) (2005). Therefore, we must consider whether this review is indeed a state-law-created right of the Plaintiff.

The Supreme Court has held that, for a statute or regulation to create a private right enforceable under §1983, the trial court must look to the rule's "rights-creating language critical to showing the requisite... intent." Gonzaga Univ. v. Doe, 536 U.S. 273, 287, 122 S.Ct. 2268, 2278, 153 L.Ed.2d 309 (2002). In Gonzaga, language in the Federal Education Rights Protection Act mandating the termination of federal funds to universities that failed to comply with data protection requirements did not create a private right of action for university students. Id.

The language of § 100.2(o), similarly, appears to be a mandate by the state towards each district to track teacher performance uniformly by means of a uniform methodology. As such, it creates no private right in a performance review for teachers, either generally or as a requirement prior to termination. Specifically, § 100.2(o)(2)(iv), which requires annual reporting, "to address the performance of teachers whose performance is evaluated unsatisfactory, including information related to the implementation fo teacher improvement plans for teachers so evaluated," is worded as a reporting requirement only, not as a property right of the teacher being reviewed. Section 100.2(o) also refers to the rights of employees to organize under the Civil Service Law, Article 14, see 8 NYCRR § 100.2(o)(2)(vi) (2005); however, no such right is infringed by the alleged denial of a performance review.

Absent any other state-law right to a pre-termination performance review or performance

improvement plan, the Plaintiff has not alleged any other property right in her employment with the District. Therefore, Defendant's motion to dismiss claims under §1983 for deprivation of due process is GRANTED.

## Conclusion

On the issues cited above, the motion of the Defendants is GRANTED in part and DENIED in part.

This constitutes the decision and order of the Court.

Date: September 30, 2005

_____
U.S.D.J.

BY FAX TO ALL COUNSEL