UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



DACETA SIMPSON,

    Plaintiff,

vs.

ENLARGED CITY SCHOOL DISTRICT
OF NEWBURGH, CHERYL BIVONA,
DIRECTOR OF SPECIAL EDUCATION,
sued in her personal capacity,

    Defendants.

05 CIV 5144 (CM)

**AMENDED**

    By and through her counsel, Michael H. Sussman, plaintiff hereby complains of defendants as follows:

## I. **PARTIES**

1. Plaintiff Daceta Simpson is a black woman of legal age. She resides

within this judicial district.

2. Defendant, Enlarged City School District of Newburgh, plaintiff's former employer, is a school district organized pursuant to the laws of the State of New York. It may sue and be sued and does not share in the sovereign immunity granted to the State of New York under 42 U.S.C. sec. 1983.

3. At all times relevant hereto, defendant Cheryl Bivona served as Director of Special Education for defendant school district and was responsible for supervising and evaluating plaintiff. Ms. Bivona is Caucasian and resides in this judicial district.

**Jurisdiction**

4. As plaintiff alleges that defendants have violated her rights on the basis of race, this Court has jurisdiction pursuant to 42 secs. 1981, 1983 and 1988 and 28 U.S.C. secs. 1331 and 1343 (3) & (4).

**Factual Averments**

5. Plaintiff was hired as a special education teacher and commenced working for defendant school district in September 2001 at Heritage Junior High School in a 12:1:1 class.

6. Before this employment, plaintiff had worked for more than fifteen years as a teacher in Jamaica.

7. On October 9, 2001, Cheryl Bivona, the district's director of special education, observed plaintiff and wrote nothing which provided plaintiff with any notice that she was failing to meet defendants' expectations of her as a teacher.

8. In March 2002, Joseph Raiti became principal of Heritage JHS.

9. On April 26, 2002, Bivona again wrote a report of an observation of one of plaintiff's classes which included nothing that provided plaintiff with any notice that she was failing to meet defendants' expectations of her as a teacher.

10. On May 16, 2002, Joseph W. Raiti, principal of Heritage Junior High School observed plaintiff, writing that "this was a well planned and delivered lesson. Students were focused on you throughout the class period and provided no management problems at all. You had several teaching techniques to support the lesson, which the students focused on you. The change of activity for this particular group, in my opinion, was good since it did not become drawn out and boring for them..."

11. In a section entitled, "Recommended Instructional Behaviors," in the same written observation, Mr. Raiti wrote, "...your director, Mrs. Cheryl Bivona, has had concerns about your teaching ability. It appears that the major concern is with diction and the use of terms. I concur with her in that

I can see where these two areas would be a problem for you and our students. As a result of our post observation conference, we will meet with Mrs. Bivona and your union representative to discuss a corrective action plan for next year...At that time I look forward to working with you and providing you with the help and assistance you need in becoming more successful."

12. On May 23, 2002, Raiti recommended plaintiff's termination as a teacher.

13. On June 4, 2002, Raiti, Bivona and plaintiff met.

14. On June 6, 2002, Raiti prepared a written summary of this meeting which included the following, "Diction and use of terms: Your use of the English language is different than ours, which is not to say that your use is improper. Coming from a different culture your use is just different. Your diction and use of different terms can be difficult to understand. Our concern is that our students with special needs would have more difficulty understanding the terms you use compounded by your diction and soft voice."

15. On June 24, 2002, Bivona presented plaintiff with a six month evaluation which graded her as average in all regards.

16. In the same document, defendant Bivona wrote, "Ms. Simpson

must use the terminology of the English language."

17. Plaintiff responded in writing the same day, "I wish to place on record the fact that I speak, read and write in only the English language."

18. Raiti and Bivona agreed that the district should re-employ plaintiff for the 2002-03 school year and advised her that they would re-evaluate her toward the end of the first semester of that year.

19. On October 24, 2002, Gail Tummarello observed plaintiff teach a Science lesson to a group of classified students

20. Among other observations, this administrator wrote the following: "she helped students stay focused on the lesson..., she [plaintiff] demonstrates great awareness of her students [sic] strengths and needs, she is very receptive to any all suggestions offered because of her desire to offer her students the most supportive and productive experiences possible.".

21. On November 20, 2002, Bivona observed plaintiff teach a math class and wrote, "Ms. Simpson has shown improvements in classroom management and verbal presentation of lessons[.]" and noted that there were "no" "performance improvement targets" "at this time". This evaluation provided plaintiff with no notice that she was failing to meet defendants' expectations of her as a teacher.

22. In February 2003, plaintiff received a teacher evaluation report

which contained some average scores.

23. Plaintiff immediately contacted Bivona and asked to meet with her to determine how she could improve these.

24. On April 14, 2003, Tummarello again observed plaintiff teaching a reading/language arts class and provided a positive report.

25. On May 23, 2003, Superintendent Johns advised plaintiff that he was recommending her termination as a special education teacher.

26. After receiving this recommendation, in June 2003, plaintiff received a highly satisfactory 6-month teacher evaluation report signed by Raiti.

27. On June 24, 2003, the defendant district advised plaintiff that the School Board had agreed to terminate her employment.

28. After further appeals by plaintiff, Superintendent Johns agreed to vacate her termination and transfer her to another school, Meadow Hill.

29. On August 25, 2003, in writing, Johns directed that principal of Meadow Hill to "keep a close eye on this placement", to observe plaintiff at least four times during the first two months of school and to "report to John Knight by November 1 if you believe Ms. Simpson is making satisfactory progress or not."

30. Dr. Johns directed that the school principal develop a teacher

improvement plan.

31. However, the initial plan was inconsistent with state regulations and withdrawn.

32. On November 10, 2003, plaintiff received this plan.

33. However, plaintiff's termination was determined by January 2004 and defendants provided her insufficient opportunity to conform to the teacher improvement plan.

34. On June 17, 2004, Acting School Superintendent Saturnelli advised plaintiff that four reasons supported her recommendation that plaintiff be terminated from employment.

35. Each of these reasons was pretextual and non-factual.

36. On June 29, 2004, defendant School Board terminated plaintiff's employment for the third time in three years.

37. At some point during plaintiff's career in the Newburgh school system, Bivona concluded that she was the worst teacher she had seen in 25 years within the district.

38. Bivona's conclusion was influenced by bias against plaintiff on the basis of her race.

39. Bivona's conclusion influenced other professionals in the school district to dismiss plaintiff's capacity as a classroom teacher.

40. Bivona's comments, which were hostile to plaintiff on the basis of her race, significantly tainted the defendant district's treatment and review of the plaintiff.

41. In both 2001-02 and 2002-03, defendant district failed to provide plaintiff, allegedly a failing teacher, with a professional improvement plan, as required by state law.

42. Defendants have not provided any non-discriminatory reason for failing to provide plaintiff with a teacher improvement plan during her first two years of employment.

43. Such a plan is required if a teacher's supervisors believe that plaintiff is not reaching the require district standard for quality in teaching.

44. Upon transferring plaintiff to the Meadow Hill School in the summer of 2003, Dr. Johns made clear his highly negative view of plaintiff and underscored the fact that, but for the district's failure to comply with state law, i.e., provide plaintiff with a timely teacher improvement plan, the district would have terminated her employment.

45. The principal of Meadow Hill plainly understood that her task was to justify the district's decision, already made twice before, to terminate plaintiff's employment.

46. The principal of Meadow Hill failed to timely develop a proper

teacher improvement plan.

47. Indeed, by the date set by Dr. Johns for this principal to provide advice to Mr. Knight concerning plaintiff's progress, the principal had failed to give plaintiff a proper teacher improvement plan.

48. Defendants discriminated against plaintiff in the terms and conditions of her employment by failing to provide her support needed to discharge her duties.

49. Defendants discriminatorily failed to provide plaintiff with a performance improvement plan.

50. Defendant Bivona acted as she did toward plaintiff out of animosity and bias based on her race.

51. Defendant Bivona's conduct cannot be explained by neutral, non-discriminatory concerns.

52. By dint of defendants' intentionally wrongful conduct, plaintiff has been caused pecuniary and non-pecuniary loss, including anxiety, humiliation, embarrassment, distress and anguish.

53. Defendant school district substantially under-employs minorities, particularly minorities of the Black race, in teaching positions within its district.

54. Such under-employment is the consequence of intentional racial discrimination both in hiring and in the terms and conditions of employment of such teachers of color.

55. Such under-employment represents an official policy and practice which caused plaintiff's termination in this instance.

**Causes of Action**

56. Plaintiff incorporates paras. 1-55 as if fully re-written herein.

57. Defendant district has failed to accord the same terms and conditions to plaintiff as it did to non-black teachers and thereby violated 42 U.S.C. sec. 1981.

58. By discriminating against plaintiff on the basis of her race, defendants violated the 14th Amendment to the United States Constitution, as made actionable against them pursuant to 42 U.S.C. section 1983.

**Prayer for Relief**

WHEREFORE, plaintiff respectfully prays that this Honorable Court:

a) accept jurisdiction over this matter;

b) empanel a jury to hear and decide all issues within its authority;

c) award to her compensatory damages with, where appropriate and proper, pre- and post-judgment interest;

d) reinstate her to her job;

e) supervise defendant district's review of plaintiff for tenure;

f) award her attorneys fees and costs arising from this litigation and

g) enter any other order deemed necessary by the facts and the law.

                Respectfully submitted,

                MICHAEL H. SUSSMAN [3497]

LAW OFFICES OF MICHAEL H. SUSSMAN
PO Box 1005
Goshen, NY 10924
(845)-294-3991

Counsel for Plaintiff

Dated: October 5, 2005