UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DACETA SIMPSON,

                Plaintiff,	**MEMORANDUM DECISION**

   -against-	**AND ORDER**

ENLARGED CITY SCHOOL DISTRICT	05 Civ. 5144 (GAY)
OF NEWBURGH, and CHERYL BIVONA,

                Defendants.
--------------------------------------------------------X

      Plaintiff, a Jamaican-born Black woman with fifteen years of prior teaching experience, was hired as a special education teacher in the Newburgh, New York school system. During the three-year period of her employment, she was observed and reviewed by various supervisors. These reviews, while not wholly consistent, document various problems with plaintiff's ability to manage a classroom. At least two supervisors also found plaintiff's diction and vocabulary difficult for special education students to comprehend. At the end of each of the three years, her supervisors recommended her for termination. She has brought suit under 42 U.S.C. §§ 1981 and 1983, alleging discrimination based on race. Presently before this Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("FRCP").[1] For the reasons set forth below, defendants' motion is GRANTED.

---

[1] This motion is before me on the consent of the parties, pursuant to 28 U.S.C. §636(c).

**I. BACKGROUND**

The following facts–taken in the light most favorable to plaintiff–are gleaned from the parties' statements pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, from the pleadings and from affidavits, affirmations and exhibits submitted by the parties in support of their contentions.  Any disputes of material fact are noted.

Daceta Simpson was employed as a special education teacher in the Newburgh City School District ("the District"), from 2001 to 2003 at the Heritage Junior High School ("Heritage") and from 2003 to 2004 at Meadow Hill Elementary School.  During this period, she was overseen in her duties by Cheryl Bivona, Director of Special Education.  Ms. Simpson is a Black woman who was born in Jamaica, where she had worked as a teacher for fifteen years prior to her employment in the District.

Ms. Simpson's classroom manner was observed by Ms. Bivona and by Joseph Raiti, principal of Heritage, on several occasions during the 2001-2002 school year.  In a May 16, 2002 memorandum, she was told by Mr. Raiti that the class he observed was "well-planned and delivered."  It also informed her that Ms. Bivona had concerns with her teaching abilities, specifically regarding Ms. Simpson's diction and vocabulary.  A week later, Mr. Raiti recommended her termination as a teacher.  This recommendation, however, was apparently withdrawn and Ms. Simpson was rehired for one year with an understanding that she would be re-evaluated after the first semester.  It is not clear whether the district board reviewed or acted upon this recommendation before it was withdrawn.

During the 2002-2003 year, she was again observed by Ms. Bivona and a Ms.

2

Gail Tummarello, from whom she again received mixed reviews. At the end of the second year, District Superintendent Johns decided to terminate her employment. Again Ms. Simpson appealed, and Superintendent Johns instead decided to transfer her to Meadow Hill. In addition, the principal of Meadow Hill was instructed by Superintendent Johns to formulate a "teacher improvement plan" ("TIP") for Ms. Simpson and to "keep a close eye on this placement," with instructions to report to a Mr. John Knight regarding her progress.

An initial TIP was made and then rejected as inconsistent with state regulations. A second plan was then issued in November, 2003. The contents of this plan were not described, but Ms. Simpson alleges that she was given insufficient opportunity to conform to the plan before the District finally decided to terminate her. It is further alleged that this determination was arrived at in January 2004, although it was not until June 17, 2004 that Acting Superintendent Annette Saturnelli informed the plaintiff in writing that her termination would be recommended. Ms. Saturnelli allegedly provided four reasons for this decision: 1) failure to meet the desired outcome of presenting Orton Gillingham lessons on an ongoing basis; 2) failure to meet the desired outcome of writing consistent lesson plans with emphasis on state standards and individualized instruction; 3) failure to make effective use of standardized test data to provide appropriate instruction to students; and 4) inability to establish and maintain a classroom climate that is consistently positive. Ms. Simpson alleges that the reasons were "pre-textual and non factual." Ms. Simpson did not have tenure or otherwise have a guarantee of continued employment.

It is generally alleged that Ms. Bivona was biased against Ms. Simpson based on

her race and national origin and was unable to make fair determinations as to her abilities; that a decision to terminate Ms. Simpson was made prior to her transfer to Meadow Hill, whose principal "plainly understood that her task was to justify the districts decision"; and that the District's failure to provide a TIP until November, 2003 constituted discrimination against Ms. Simpson and a violation of law.  It is further alleged that the District "substantially under-employs minorities", which "represents an official policy and practice which caused plaintiff's termination in this instance."

Ms. Simpson's amended complaint alleges:

1. Defendant district has failed to accord the same terms and conditions to plaintiff as it did to non-Black teachers and thereby violated 42 U.S.C. § 1981 and

2. Discrimination on the basis of race under the Fourteenth Amendment and 42 U.S.C. § 1983.

Plaintiff commenced the instant action on or about May 31, 2005.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FRCP 56(c).  Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists.  LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995).  If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is a genuine issue for trial."  FRCP

56(e).

When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

Caution should be exercised in addressing summary judgment motions in discrimination cases where intent and state of mind are at issue because "careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination." See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000) (citations omitted). Nonetheless, the Second Circuit has expressly "remind[ed the] district courts that the impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable." See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quotation and citation omitted). On the one hand, mere conclusory allegations of discrimination will not defeat a summary judgment motion; a plaintiff in a discrimination case must proffer "concrete particulars" to substantiate his claim. See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). On the other hand, courts must be aware of the fact that "discrimination will seldom manifest itself overtly." Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999). Courts

must therefore "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture."  Id.  Thus, the ultimate question in deciding a summary judgment motion in a discrimination case "is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances."  Id.

**III.  SUMMARY JUDGMENT ANALYSIS: U.S.C. §§ 1981, 1983**

The plaintiff brings her claims of employment discrimination under 42 U.S.C. § 1981 and 42 U.S.C. § 1983.  As such, on a motion for summary judgment, both claims are subject to review pursuant to the three-step, burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  See Back v. Hastings in Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004) (applying McDonnell Douglas analysis to discrimination claims brought under 42 U.S.C. § 1983); Lizzardo v. Denny's, Inc., 270 F.3d 94, 103 (2d Cir. 2001) (applying McDonnell Douglas analysis to discrimination claims brought under 42 U.S.C. § 1983).  Under the McDonnell Douglas framework, plaintiff must first establish a prima facie case of discrimination by demonstrating that: (1) she belongs to a protected class; (2) he suffered an adverse employment action; (3) she was performing his duties satisfactorily; and (4) the circumstances surrounding the employment action give rise to an inference of discrimination.  See Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005). Plaintiff's burden of establishing a prima facie case is "minimal."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If the plaintiff establishes his prima facie case, a presumption that the employer

unlawfully discriminated against the employee is raised and the burden of production then shifts to the employer "to articulate some legitimate nondiscriminatory reason" for its actions.  See Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en banc).  "The employer's explanation must be clear and specific, so that the employee has an opportunity to demonstrate pretext."  Hill v. Taconic Dev. Disabilities Serv. Office, 181 F.Supp.2d 303, 317 (S.D.N.Y. 2002).

"Should the defendant carry this burden, the plaintiff must then demonstrate that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Id.  See St. Mary's Honor Ctr., 509 U.S. at 507-08.  In determining whether the plaintiff has met this burden, the court must take a "case-by-case" approach that weighs "'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case.'" James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 148-49 (2000)).  In other words, although the burden of production shifts, "the ultimate burden rests with the plaintiff to offer evidence sufficient to support a reasonable inference that prohibited [age, gender, race or national origin] discrimination occurred."  Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (quotation and citation omitted).

**IV. DISCUSSION**

Plaintiff clearly meets her burden of proof on the first two elements of her prima facie case under McDonnell Douglas, as: (1) she is Black, and (2) she was terminated as a special education teacher in the Newburgh School District. The record is conflicted, and we will assume, arguendo, that plaintiff met the third element of the test and that (3) she was performing her duties satisfactorily.

Thus, plaintiff's discrimination claim turns on the fourth element–whether she has sufficiently shown that the adverse employment action occurred under circumstances that give rise to an inference of discriminatory intent.

**A. Defendant Bivona**

Among other things, plaintiff argues that an inference of discrimination arises from a comment made by Mr. Raiti, principal of Heritage Junior High School, in memoranda to the plaintiff dated May 16 and June 6, 2002. The pertinent excerpt from the June 6 memorandum is as follows:

> Diction and use of terms: Your use of the English language is different than ours, which it (sic) is not to say that your use is improper. Coming from a different culture your use is just different. Your diction and use of different terms can be difficult to understand. Our concern is that our students with special needs would have more difficulty understanding the terms you use compounded by your diction and soft voice.

The memorandum stated that this concern was shared by Mr. Raiti and the defendant Ms. Bivona.

"An adverse employment decision may be predicated upon an individual's accent when–but only when–it interferes materially with job performance." Altman v. New York City

Dep't of Educ., No. 06-CV-6319, 2007 WL 1290599, at *4 (S.D.N.Y. May 1, 2007), (quoting Meng v. Ipanema Shoe Corp., 73 F. Supp.2d 392, 399 (S.D.N.Y. 1999)). "There is nothing improper about an employer making an honest assessment of the oral communications skills of a candidate for a job when such skills are reasonably related to job performance." Id.  In Meng and Thelusma v. New York City Bd. Of Educ., No. 02-CV-4446, 2006 WL 2620396 (E.D.N.Y. Sept. 13, 2006), the courts, in fact, granted summary judgment to defendants when their stated reason for termination was a plaintiff's communications skills. "The key inquiry is whether the comments about a person's accent may be probative of discriminatory intent."  Altman, 2007 WL 1290599 at *5.

In the present case, defendant has made no facially discriminatory remarks about plaintiff's manner of speech.  The comments found in the memorandum written by Mr. Raiti and apparently shared by defendant Bivona are a critique of the communication skills of a special education teacher, a position in which usage of understandable English bears some relationship to her job performance. From said statements, plaintiff alleges that Ms. Bivona was biased against her because of her race.  However, plaintiff has not produced anything, said or written by defendant that indicates any racial animosity towards her. Plaintiff alleges that Bivona was concerned with her "diction and use of terms, among other things."  Such proof is insufficient to create an inference of discriminatory intent.  A job performance related comment about an employee's accent does not suggest an underlying bias against persons of that national origin.  See Watt v. New York Botanical Gardens, No. 98-CV-1095, 2000 WL 193626, at *7 (S.D.N.Y. Feb 16, 2000).  In sum, plaintiff fails to proffer sufficient evidence from which a reasonable jury could conclude that defendant discriminated against her because of her race or national origin.

**B. Defendant School District**

Plaintiff asks the Court to find an inference of a policy of discrimination on the part of the District because: 1) the District "substantially under-employs minorities"; 2) the District failed to provide her with a TIP until November 2003; and 3) Superintendent Santurnelli recommended her for termination allegedly in part because of her race. In order to prevail on her claim against the District, plaintiff must show that the deprivation of her rights under §§ 1981 and 1983 was caused by a custom or policy. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735-36 (1989). A district policy exists where: 1) the District has promulgated a formal rule advocating or supporting the contested conduct, or 2) a single act is taken by a District employee who, as a matter of state law, has final policymaking authority in the area in which the action was taken. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). Here, the evidence does not support an inference of a policy or custom of discriminatory intent.

Plaintiff alleges that the school district under-employs minority teachers, claiming that at various times, only four of eighty-two and two of eighty teachers in the District were Black. While plaintiff may establish her prima facie case "by either direct, statistical or circumstantial evidence", see Bickerstaff v. Vassar Coll., 196 F.3d 435 (2d Cir. 1999), mere underemployment of minorities, absent a discriminatory intent or plan, is insufficient as a matter of law to constitute a policy of discrimination. See Washington v. Davis, 426 U.S. 229, 242 (1976). For this reason, a statistic showing the number of minority teachers employed by the school district alone is insufficient. As there is no evidence of a discriminatory intent or plan, said statistics do not give rise to an inference of discrimination.

10

Plaintiff's contention concerning the District's delay in furnishing the plaintiff with a TIP also does not support an inference of a policy of discrimination. Plaintiff makes general allegations that the District failed to provide plaintiff with a TIP because of her race. However, there is insufficient evidence in the record that White teachers were provided TIPs in a shorter period of time. The record shows that the District worked through several drafts of plaintiff's TIP, including revising the plan on one occasion to accommodate the plaintiff's input when plaintiff rejected a draft of the plan in October 2003. In any event, plaintiff received a TIP which was in compliance with state law and also apparently acceptable to all parties in November of 2003.[2]

Finally, plaintiff alleges that Superintendent Santurnelli is a district employee who, as a matter of state law, has final policymaking authority in the area in which the action was taken. Plaintiff further alleges that, in recommending plaintiff's termination to the school, Santurnelli established a district policy of race discrimination. New York state law is dispositive on the issue of whether a school superintendent has final policy making authority in this matter. Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). Under New York law, the decision to terminate a probationary teacher is made by the board of education upon recommendation of the superintendent of schools. N.Y.Educ.Law § 3012. As such, the board of education is the final decision maker and not the superintendent of schools. Back v. Hastings-on-Hudson Union Free Sch. Dist.,

---

[2] Plaintiff's principal complaint concerning the TIP appears to be that she did not have adequate time in which to conform to the District's critique before the decision was made to fire her. The record, however, lists no fewer than five written memoranda (besides the TIP) addressed to plaintiff concerning her performance, dated between September and the end of November of 2004. Plaintiff also acknowledges that "early in the 2004 school year" she was assigned a mentor.

365 F.3d 107, 128 (2d Cir. 2004). Therefore, a single act by Santurnelli does not establish a District policy of discrimination.[3]

In sum, plaintiff fails to proffer sufficient evidence from which a reasonable jury could conclude that defendant District discriminated against her because of her race or national origin.

## VI. CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is **GRANTED** and plaintiff's claims are dismissed.

The Clerk of the Court shall enter judgment accordingly.

Dated: September 26, 2007
White Plains, New York

**SO ORDERED:**

_____
GEORGE A. YANTHIS, U.S.M.J.

---

[3] Assuming *arguendo* that Santurnelli did have final policy making authority, a review of the record fails to reveal evidence that any of his decisions or actions give rise to an inference of racial bias or discrimination.

12